THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHNNIE FLOURNOY, # B61265, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:26-cv-00386-GCS |
| | ) | |
| WEXFORD HEALTH SOURCE, INC., | ) | |
| CENTURION HEALTH, and | ) | |
| PERCY MYERS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**SISON, Magistrate Judge:**

Plaintiff Johnnie Flournoy is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.[1] (Doc. 1). He claims Defendants were deliberately indifferent to his need for surgery and other treatment and failed to accommodate his disability-related needs. Plaintiff seeks monetary damages.

Plaintiff's Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out

---

[1]    Although Plaintiff mentions only the ADA, "the [RA] is available to him, and courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (internal citations omitted).

non-meritorious claims.[2] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff is a long-term IDOC inmate and has been housed at Pinckneyville since July 2021. (Doc. 1, p. 2). He states that he is completely blind in his left eye and has only partial vision in his right eye, making him legally blind. (Doc. 1, p. 2, 7). He suffers from other medical problems including A-fib, high blood pressure, advanced glaucoma, eczema, colon polyps, and a hiatal hernia. (Doc. 1, p. 3). He learned in mid-2024 that during a colonoscopy performed in 2015 or 2016 at a Joliet hospital while he was incarcerated at Stateville Correctional Center, the provider found colon polyps but did not remove them. Plaintiff was not informed of this diagnosis, which exposed him to cancer. Plaintiff discovered this medical history through reviewing medical records obtained in connection with another lawsuit.

Plaintiff had another colonoscopy in early 2025 at a Mt. Vernon hospital, during which the doctor removed three colon polyps. (Doc. 1, p. 4). At a follow-up visit in late 2025, the doctor told Plaintiff the polyps should have been removed when they were first

---

[2]     The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, Centurion, and the IDOC.

discovered. Two were "clean" but the third tested positive for cancerous matter. The doctor further told Plaintiff he needed surgery to remove the hiatal hernia, but Defendants Wexford Health Sources, Inc. ("Wexford") and Centurion Health ("Centurion") both denied the hernia surgery because of cost. (Doc. 1, p. 4).

Defendant Dr. Myers knew about Plaintiff's polyps and hernia as early as 2023 but never informed Plaintiff of those conditions and failed to provide him with any care for them. (Doc. 1, p. 4, 7). Dr. Myers told Plaintiff after each checkup that he was fine. Wexford likewise knew about the polyps and hernia but never informed Plaintiff and never provided any treatment or care. The delay worsened Plaintiff's condition and endangered his health.

When Plaintiff finally learned about the hiatal hernia, Dr. Myers told him surgery would be scheduled, but this was not true. (Doc. 1, p. 4). Dr. Myers knew Wexford would not pay for the surgery or any treatment. As a result of the delay, Plaintiff developed A-fib in May 2024. (Doc. 1, p. 4, 13). Plaintiff thus required medical clearance before undergoing a colonoscopy. (Doc. 1, p. 4, 14). Plaintiff believes Dr. Myers knowingly denied inmates medical treatment to cut costs and earn a bonus from Wexford. (Doc. 1, p. 5). As of the date of his Complaint, Plaintiff has received no treatment for the hernia or the cancerous colon polyp.

Since Centurion took over the contract to provide inmates with medical care, Plaintiff has experienced problems getting his glaucoma prescription medication properly filled, as well as receiving his prescribed eczema treatment. Centurion also denied Plaintiff any treatment for his hernia and offered no treatment or care for the

positive colon polyp cancer finding. (Doc. 1, p. 5). Wexford and Centurion both maintained a custom, practice, and policy to deny adequate medical treatment for inmates. (Doc. 1, p. 6).

Plaintiff has not received adequate accommodations at Pinckneyville for his visual impairment. (Doc. 1, p. 7). He had problems getting an ADA attendant and ADA showers. (Doc. 1, p. 7, 16-23). He was told there were no ADA showers, only "immobility showers." (Doc. 1, p. 7, 25). On June 20, 2025, he was promised ADA accommodations of a tablet, audio books, and a Braille learning program but nothing has been provided for over a year. (Doc. 1, p. 8, 26). His physical therapy evaluation pass was cancelled due to a lockdown. (Doc. 1, p. 8, 27-28).

### PRELIMINARY DISMISSALS

The Court notes that Plaintiff's claims against Dr. Myers and Wexford for denying and delaying his access to medications and treatment for glaucoma and eczema, as well as high blood pressure and a throat condition during his stay at Pinckneyville, are proceeding in *Flournoy v. Wexford, et al.*, Case No. 24-cv-2420-GCS (S.D. Ill.) (Doc. 10, p. 6-7). Plaintiff's claims in this case regarding his access to medications are duplicative of those in Case No. 24-2420 and will not be considered here.

### DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    Eighth Amendment deliberate indifference claim against Dr. Myers, Wexford, and Centurion for failing to provide Plaintiff with surgery for his hiatal hernia.

Count 2:     Eighth Amendment deliberate indifference claim against Dr. Myers, Wexford, and Centurion for failing to provide Plaintiff with surgery or treatment following removal of a colon polyp that tested positive for cancer.

Count 3:     ADA/RA claim against defendants for failing to provide Plaintiff with accommodations for his visual impairment at Pinckneyville.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

---

[3]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

Plaintiff's hiatal hernia is an objectively serious medical condition. His allegations indicate that Dr. Meyers was aware of this serious condition yet failed to arrange for surgical treatment.

Plaintiff further alleges that Wexford and then Centurion – the companies contracted to provide medical care at Pinckneyville – both refused to approve his hernia surgery due to their policy, custom, or practice to cut costs, denying adequate medical care for inmates. Plaintiff's allegations state a viable claim against Wexford and Centurion. *See, e.g.,* *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (noting that corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

Count 1 will therefore proceed against Dr. Meyers, Wexford, and Centurion.

### Count 2

Plaintiff's allegations that Dr. Meyers knew about his cancerous colon polyp, yet failed to provide further treatment, state a claim for deliberate indifference under the standard set forth above.  Plaintiff also asserts that Wexford and Centurion denied treatment or care for his colon polyps due to their cost-cutting policies. At this stage, the deliberate indifference claim in Count 2 will also proceed against Dr. Meyers, Wexford, and Centurion.

### Count 3

Plaintiff's allegations regarding the failure to provide him with a tablet, audio books, or Braille materials as disability accommodations are sufficient to state a viable ADA and/or RA claim. He also alleges "problems" obtaining an ADA attendant and

attaches copies of a grievance from late 2021 and a request to the ADA Coordinator from May 2024 that indicate some recurring delays in receiving that accommodation. (Doc. 1, p. 16-19). Plaintiff also sufficiently states a claim on the ADA attendant issue.

However, Plaintiff's allegation that "ADA showers" are not available is confusing, considering his statement that the prison does provide "immobility showers." It is unclear whether there is any difference between these two descriptions of showers, and Plaintiff does not explain how the alleged lack of ADA showers fails to accommodate his disability-related needs. Finally, the single instance where Plaintiff's physical therapy evaluation pass was cancelled due to a lockdown does not rise to the level of a constitutional violation.

An ADA/RA claim cannot proceed against individual defendants, as individual employees of IDOC cannot be sued under the ADA or the RA. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). Instead, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his/her official capacity)). Accordingly, the Clerk of Court will be directed to add the Illinois Department of Corrections ("IDOC") as a defendant. Count 3 will proceed only against the agency, on the matter of failure to provide an ADA attendant, tablet, audio books, and Braille materials. The remaining defendants are dismissed from this claim.

### DISPOSITION

The Complaint states colorable claims in Counts 1 and 2 against Wexford,

Centurion, and Dr. Myers, and in Count 3 as limited above against the Illinois Department of Corrections. The Clerk of Court is **DIRECTED** to **ADD** the Illinois Department of Corrections as a Defendant.

The Clerk shall prepare for Wexford Health Source, Inc., Centurion Health, Percy Myers, and the Illinois Department of Corrections: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this**

**Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  August 7, 2026.**

Digitally signed by
Judge Sison
Date: 2026.08.07
14:15:53 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.